06-321 SEC:smm

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **SANDRA A. MITTON** | : | |
| **GREGORY MITTON** | : | |
| | : | |
| **VS.** | : | **C.A. 07-028-S** |
| | : | |
| **KIM M. JOLLY and** | : | |
| **RICHARD E. SPENCER** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' NOTICE OF APPEAL**

**I. Procedural Posture**

Defendants filed a Motion for a Rule 35 Physical Examination to be conducted by Dr. Stephen Saris, scheduled for October 9, 2007 at 9:15 a.m. On October 2, 2007 Plaintiff filed an Objection to the Rule 35 Motion for Physical Examination on the grounds that there was no good cause shown for the examination, and the time, place, conditions and scope of the examination were not disclosed. In the response thereto, on October 5, 2007, prior to the hearing before Magistrate Almond, Defendants filed a Reply Memorandum in Support of their Rule 35 Examination, including an Affidavit executed by Dr. Saris, regarding more detailed information as to the scope of the examination, as well as the intent of the examination.

A hearing was conducted before Magistrate Almond in the afternoon on October 5, 2007 and he took the matter under advisement, issuing a Text Order later that same day, denying Defendants' Motion for Examination on the grounds that "good cause" was not established and that the condition, manner and scope of the examination were not adequately disclosed. Defendants now file the enclosed Appeal of that ruling, pursuant to L.R.Cv. 72(c).

## II. Facts

This case arises out of an automobile accident that occurred on December 22, 2005 between a motor vehicle operated by Sandra Mitton and a vehicle owned by Defendant, Richard Spencer, and operated by Kim Jolly. Plaintiff, Sandra Mitton, is alleging an injury to her cervical spine as a result of the motor vehicle accident, and is still in still in active treatment for that condition. Over the course of her treatment, Ms. Mitton had occasion to be treated by three neurosurgeons, Dr. Michael Olin, who found that surgery was indicated; Dr. Michael Harrison who felt that surgery was not indicated, and, Dr. Curtis Doberstein, who has not yet rendered an opinion either way with respect to surgery. Plaintiff, Sandra Mitton, ceased treatment with Dr. Olin as of March 28, 2007, was last seen by Dr. Harrison on May 30, 2007, and had only one visit with Dr. Doberstein on June 5, 2007.

Plaintiff testified at her deposition, conducted on July 24, 2007, that she was undergoing a series of three injections which were not resulting in any improvement in her condition. She testified that she intended to make follow up appointments with both Dr. Doberstein and Dr. Harrison to discuss her surgical options, in light of the failed series of injections administered by Dr. Turnier. Defendants have been advised by Plaintiffs' counsel that she has not, in fact, sought any follow up treatment to date. An affidavit of life expectancy table was just received from Plaintiffs on October 16, 2007, apparently indicating a claim for permanancy will be made by Plaintiff, Sandra Mitton.

Defendants contacted Dr. Stephen Saris to perform a medical records review, which was completed by him on August 3, 2007. After receiving Dr. Saris' records review, a decision was made to retain him for the purpose of testifying as Defendants'

expert at the time of trial. Dr. Saris rendered several opinions as a result of his records review, including that Ms. Mitton suffered a soft tissue injury that should have healed within weeks or months; any problems after March of 2006 were not related to the events of December 2005; that no herniated disc resulted from the accident; and, that no surgery was necessary or indicated. Dr. Saris indicated in his report that if there were any other records or imaging studies available, he would appreciate the opportunity to review them.

Thereafter, Defendants consulted with Dr. Saris, who indicated that he would be willing to testify at the time of trial; however, in order to be completely thorough in rendering his opinion, especially in light of the Plaintiff's on-going medical treatment, which continues to the present date, he would like the opportunity to perform an independent medical examination on Sandra Mitton, to determine whether or not anything is revealed through that physical examination and general neurological examination, that would alter his opinion in any way. On this basis, Defendants filed the Motion for a Rule 35 Examination.

## III. <u>Argument.</u>

### A. Defendants have established "good cause" for a Rule 35 Examination.

In support of Defendants' Motion for a Rule 35 Examination, Defendants submitted the initial Motion for a Rule 35 Examination, as well as a reply Memorandum to the Plaintiffs' Objection to the Motion.

Plaintiffs indicated in their objection that Defendants did not show "good cause" and did not specify the time, place, manner, conditions and scope of the examination. Defendants' Reply Memorandum focused upon those arguments. Defendants maintained that pursuant to the U.S. Supreme Court decision in *Schlagenhauf v. Holder*, 85 S. Ct.

234, 379 U.S. 104 (1964), the pleadings alone are sufficient to establish that the Plaintiff's medical condition is in controversy and Defendant has good cause for an examination. *Schlagenhauf* at 243 (*citing Sibbach v. Wilson and Co.*, 61 S. Ct. 422, 312 U.S. 1 (1941). The Court found that where a Plaintiff in a negligence action asserts a physical injury, they place that physical injury clearly in controversy and, therefore, provide good cause for Defendant to perform an examination to determine the existence and extent of such asserted injury. *Id.*

Although Magistrate Almond relied, in part, upon the case of *Waite v. Noble Drilling Corp.*, 33 Fed. R. Serv. 318 (E.D. La. 1996), in denying Defendants' motion for lack of "good cause", Defendants respectfully argue that such reliance was misplaced. In *Waite*, the Court held that where a Rule 35 motion is contested, it is addressed to the sound discretion of the trial court whether the motion should be allowed. *Waite* at 318. In *Waite* the Defendants sought to have the Plaintiff submit to an invasive procedure; an arteriogram, to reveal the cause of the plaintiff's erectile dysfunction condition. *Id.* After balancing the asserted need for the arteriogram against the risks and invasive nature of the procedure, defendants were found to have failed to demonstrate good cause. *Id.* The Court also commented that the Defendant's experts had already rendered a written opinion without the test and the experts were prepared to move forward without the test. The test was only to offer a bit more information to the case, which was unnecessary in light of the invasive nature of the procedure and risks involved.

In the instant case, Dr. Saris, although rendering an opinion in a preliminary records review, has advised Defense Counsel that he requires an examination to obtain a complete picture of the Plaintiff prior to testifying. In addition, he submitted an affidavit

attesting to that fact, stating the purpose of the Rule 35 exam. (See Dr. Saris' Affidavit, attached in support of Defendants' Reply Memorandum for their Rule 35 Motion, Document Number 51, Paragraph 6). In addition, the Plaintiff continues to treat for this injury and is alleging possible surgery (as there is no consensus among her three treating neurosurgeons) and now, as of October 16, 2007, apparently a permanent injury, in light of the life expectancy table submitted by Plaintiffs. The exam requested by Defendants, a physical and general neurological exam, is not overly invasive nor does it have any associated risks to the plaintiff.

**B. Defendants have supplied adequate disclosure of the manner, conditions and scope of the examination pursuant to Rule 35.**

The original Motion gave notice of the date, time, place and person taking the examination. Defendants' reply Memorandum and accompanying affidavit of Dr. Saris provided further details as to the manner, condition and scope of the examination. Dr. Saris attested there was a one hour time slot set aside for the exam on October 9, 2007, that the examination would include a general neurological exam upon the plaintiff, by taking a history from the plaintiff, as well as performing a physical examination, to include a general neurological examination. In addition, it was affirmatively stated that no diagnostic testing, such as an EMG would be performed. (See Dr. Saris' Affidavit, attached in support of Defendants' Reply Memorandum for their Rule 35 Motion, Document Number 51).

At the time of the hearing on Defendants' Motion, Magistrate Almond asked for specific details as to exactly what would be discussed with Ms. Mitton, as well as exactly what type of physical examination would be performed upon the Plaintiff. (See Transcript p. 12-15). Defense counsel was able to represent that although no specific

neurological tests, such an EMG or nerve conduction study would be performed, a general physical and neurological examination would be performed, to include range of motion testing. Defense counsel was unable to give any further information regarding the specifics of the examination in light of the fact that such was not discussed with Dr. Saris and defense counsel is not a medical professional.

Defendants argue that the information provided in Defendant's initial Motion, Defendants' Reply Memorandum, and the accompanying Affidavit of Dr. Saris were sufficient and constituted adequate disclosure to comply with the requirements of Rule 35.

**C. To deny Defendants Rule 35 Motion is contrary to the intent of the rule itself.**

There is an abundance of federal case law interpreting Rule 35 as a forthright attempt to level the playing field between the parties in their respective efforts to appraise the Plaintiff's physical state. *See Sauer v. Burlington Northern .RR. Co.*, 169 F.R.D. 120 (D. Minn. 1996); *Looney v. National R.R. Passenger Corp.*, 142 F.R.D. 264 (D. Mass. 1992); *Tomlin v. Holecek*, 150 F.R.D. 628 (D. Minn. 1993). The *Tomlin* Court held that in the absence of Rule 35, the Defendant's challenge to the physical or mental condition of the Plaintiff could only be advanced through the questioning of his treating or consulting health care professionals. *Tomlin* at 632. The promulgators of Rule 35 obviously concluded that under these circumstances, the crucible of cross-examination was an insufficient test of the truth, and accordingly, independent medical examinations, which could be undertaken only upon agreement of the parties or at the discretion of the Court, were prescribed. *Id.*

> While not without inherent shortcomings, the approach adopted by <u>*Rule 35* is a considered attempt to fairly place the parties on a somewhat equal footing</u>. We say "somewhat", because the *Rule 35* examination is, necessarily, an approximation a truly consultative approach and intrinsic distinctions between the *Rule 35* examination and the evaluatory techniques of a treating physician do exist. On the one hand, the plaintiff may select as may health care professionals as he should desire in order to appraise his physical or mental state on as many occasions as should be deemed necessary, while the Defendants' selection of a consultant is limited, at least to some degree, by their need to obtain the Court's confirmance before the selection can be finalized and, usually, for a one-time appraisal *Id.* (emphasis added).

In support of the instant Defendants' Rule 35 Motion, Dr. Stephen Saris represented to defense counsel verbally, after preparing his medical records review, that he recommended an IME be performed. He also completed an Affidavit detailing that the intent of the examination was to allow him an opportunity to perform a physical examination of the Plaintiff, in addition to reviewing the medical records, so he could possess a complete picture upon which to render a medical opinion in the case and be assured that there would be nothing revealed during such an examination, either by way of patient history or physical examination, including a general neurological exam, that would alter his opinion in any way. (See Dr. Saris' Affidavit, attached in support of Defendants' Reply Memorandum for their Rule 35 Motion, Document Number 51, Paragraphs 2 and 6). Despite the fact that the initial medical records review that was prepared by Dr. Saris did not include a statement that a medical examination would be necessary in order to render an opinion, such should not prohibit the doctor from thereafter stating that he feels the same is necessary in order to obtain a complete medical picture on the Plaintiff. This is especially true in a case where the Plaintiff now seems to be alleging some type of permanency and has not been examined by any of her own

treating doctors since June 5, 2007, when last seen by Dr. Doberstein, and no permanency was commented on his report.

Medical records review are routinely performed by Defendants in personal injury actions, in order to have an independent evaluation of Plaintiff's medical treatment, so that a decision may be made by defense counsel as to whether Plaintiff's claim is viable or if there are defenses to the same. It is not standard practice that doctors will include in such a medical records review an affirmative statement that the Plaintiff needs to be examined in order to render an opinion. Rather, the purpose of the medical records review is for the doctor to examine only the medical records and diagnostic studies and render an opinion based solely upon that information. If it was the practice of medical doctors to include in their medical records review that all such opinions are subject to examining the patient, it would render their records reviews and the opinions contained therein useless to defense counsel.

To prohibit the Defendants' expert from having an opportunity to examine the plaintiff, when he has made an affirmative statement under oath indicating that this is necessary in order to have a complete picture and render a complete medical opinion in this case, is patently unfair. Such would result in an uneven playing field between the parties, which Rule 35 was designed to prevent, as is clear from a reading of the Federal case law on this issue.

**D. No special precautions of videotaping or attendance by Plaintiffs' counsel are necessary in this case if Defendants' Rule 35 Motion is granted.**

Should this Court be inclined to reverse Magistrate Almond's ruling and allow the Rule 35 examination to take place, Defendants would request that the videotaping of the same, as requested by the Plaintiffs in their Objection to the original Motion, be denied.

As Defendants indicated in their Reply Memorandum, Dr. Saris is a board certified neurologist who is very well-known in the Rhode Island medical community. He has been performing independent medical examinations for over 18 years, and has never received a request for a videotaped physical examination. (See Dr. Saris' Affidavit, attached in support of Defendants' Reply Memorandum for their Rule 35 Motion, Document Number 51, Paragraph 4). Therefore, the Plaintiffs' allegation that such is common practice simply is not accurate.

The weight of federal authority favors the exclusion of recording of the examination and attendance of Plaintiffs attorney or any third parties. *See Holland v. U.S.A.*, 182 F.R.D. 493 (D.S.C. 1998); *Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553 (D. Conn. 2006); *Warrick v. Brode*, 46 F.R.D. 427 (D. Del 1969); *Romano v. II Morrow Inc.*, 173 F.R.D. 271 (D. Or. 1997); *Abdulwali v. Washington Metro Transit Authority*, 193 F.R.D. 10 (D.D.C. 200). These Federal Courts have held that audio and/or videotape are unnecessary in light of the Rule 35 report to be generated, and to allow such would thwart and frustrate the candor of the examination. The Federal Courts favor a one-on-one, unimpeded exchange between doctor and patient. *See Romano* at 274 (*citing Shirsat v. Mutual Pharm. Co.*, 169 F.R.D. 68 (E.D. Pa. 1996)). In addition, requests for plaintiffs' attorneys to attend can result in complications. If the attorney desires his observations to be possible contradiction of the doctor, the attorney is in effect making himself a witness in the case, contrary to the Rules of Professional Ethics. *See Warrick* at 427. The party desiring attendance bears the burden to establish good cause as to why such attendance is necessary. *Id.*

Any concerns with distortions or inaccuracies by the examining doctor can be addressed through traditional methods of impeachment and cross-examination. *See Cabana v. Forcier*, 200 F.R.D. 9, 12 (D. Mass. 2001) (c*iting Baba-Ali v. City of New York*, 1995 U.S. Dist. Lexis 18883, 195 W.L. 753904); *see also Warrick, supra* at 427.

The videotaping of the examination in the instant case is clearly unnecessary and is designed to impede the examination of Dr. Saris. Dr. Saris will certainly provide a report with the results of his examination, as mandated by Rule 35, and such would be sufficient to preserve the information revealed through the examination. Any issues relating to Dr. Saris' examination or report could then be addressed at the time of trial through Plaintiff's expert testimony and cross-examination of Dr. Saris. Given that Dr. Saris will provide the written examination, there is no need to safeguard the accuracy of the physical examination by videotape. Defendant has certainly not had the benefit of all of the Plaintiff's examinations with her treating physicians videotaped, so that they could be examined by Defendants' expert or the jury at the time of trial. *See Abdulwali* at 13 (*citing Cassano v. Washinton Metro. Area Transit Auth.*, Civ. A. No. 92-16285 (Super. Ct. D.C. August 31, 1993) (Burnett, J.)). To allow the videotaping solely of Dr. Saris' examination, when none of the Plaintiff's treating examinations were taped, sets his examination up as suspect and not to be believed in the eyes of the jury. Therefore, the parties would be beginning on an uneven playing field with their expert examination versus that of the Plaintiff's treating doctors.

In addition, the already difficult environment of an independent medical examiner examining a party Plaintiff would be made even more difficult. The doctor would have even more difficulty eliciting any type of dialogue or candidness with the Plaintiff and

securing an actual history and obtaining thorough and accurate information from her, with a videotape running the whole time, would be unlikely. This is likewise suggested in Dr. Saris' affidavit, which indicates the videotaping of the examination would be an unreasonable intrusion upon his examination and evaluation, as well as being distracting and interfering to the evaluation process. (See Dr. Saris' Affidavit, attached in support of Defendants' Reply Memorandum for their Rule 35 Motion, Document Number 51, Paragraph 5) In addition, despite the Plaintiffs' allegations that these conditions are specifically allowed under Rule 35, a review of the rule itself shows that that is not the case.

As a matter of compromise, Defendants have previously indicated they would have no objection to a representative from Plaintiffs' attorneys' office being present, as an independent observer who would not interject him or herself into the examination process and who would refrain from giving any history on behalf of the Plaintiff or making any statements whatsoever. However, Defendants would object to Plaintiff's attorney being present himself, or any videotaping or recording of the examination, for the reasons outlined above.

**E. If the examination is allowed, Defendants request hat an extension of the discovery deadline be allowed, so that the exam and report of Dr. Saris could be obtained and Dr. Saris be allowed to amend his expert report under Rule 26.**

If the examination is allowed, Defendants would request that such be allowed after the close of discovery which is presently set November 10, 2007. This is based upon the fact that the original examination was scheduled for October 9, 2007, but had to be cancelled after Defendants' Motion for the Rule 35 Examination was denied. Defendants have been notified that the doctor does have dates available to schedule this examination

in the month of November, however, no date will be held until prepayment is made. Defendants have not made such prepayment, in light of the fact that they have already paid and forfeited the fee for the initial examination, which did not end up going forward, based upon the denial of the Motion. Therefore, Defendant would respectfully request an additional 45 days from the date of the close of discovery, up though December 25, 2007, in order for Dr. Saris to complete his independent medical review and prepare a report regarding the same.

**IV. Conclusions**

Defendants respectfully request that this Honorable Court reverse the ruling of Magistrate Almond and grant Defendants' Motion for a Rule 35 Physical Examination to be performed upon Plaintiff, Sandra Mitton, by Dr. Stephen Saris, and allow an extension of time of the discovery deadline of 45 days, up through December 25, 2007, to allow completion of the same.

/s/ Sharon E. Collins-Abbott
Sharon E. Collins-Abbott (RI Bar: 4985)
LAW OFFICES OF AMY BERETTA
211 Quaker Lane – 1st Floor
West Warwick, RI 02893
(401) 821-0188
(401) 821-7410 (fax)
scollinsabbo@metlife.com

# CERTIFICATION

I, the undersigned, hereby certify that on the **19th** day of **October, 2007** I did send a true copy of the within Memorandum of Law in Support of Defendants' Appeal by electronic means (ECF) to:

ttarro3rd@tarrolawfirm.com
smerolla@merollalaw.com

/s/ Sharon E. Collins-Abbott
Sharon E. Collins-Abbott (RI Bar: 4985)
LAW OFFICES OF AMY BERETTA
211 Quaker Lane – 1st Floor
West Warwick, RI 02893
(401) 821-0188
(401) 821-7410 (fax)
scollinsabbo@metlife.com